UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAPIO FUNDING, LLC, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § Civil Action No. 3:17-CV-02713-X <br> § <br> RURAL/METRO OPERATING § <br> COMPANY, LLC and AMERICAN § <br> MEDICAL RESPONSE, INC., § <br> § <br> *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Capio Funding, LLC (Capio) brings this action against defendants Rural/Metro Operating Company, LLC (Rural/Metro) and American Medical Response, Inc. (American Medical) to recover damages in excess of $2,000,000 based on breach-of-contract and tortious-interference claims. The defendants moved for summary judgment. After careful consideration, and as explained below, the Court **GRANTS** the defendants' motion for summary judgment.

### I. Background

This case involves a contract dispute between Capio, which manages non-performing healthcare accounts, and Rural/Metro, which provided medical transport services. In July 2015, Rural/Metro merged with American Medical, which is also in the business of medical transportation.

Capio and Rural/Metro entered into an Account Purchase and Sale Agreement (Agreement) in November 2014. Under the Agreement, Rural/Metro agreed to sell,

1

and Capio agreed to buy, non-performing accounts specifically identified in "the Schedule of Accounts."[1]  The Schedule of Accounts included "825,522 Accounts with an aggregate Current Balance of $569,400,759.92" identified in an Excel workbook.[2]

The Agreement also contained Amendment No. 1 (Amendment), which amended section 2.4 of the Agreement.[3]  Under the Amendment, Rural/Metro agreed to "deliver and offer to sell additional accounts to [Capio] (such additional Accounts 'Forward Flow Accounts,' and each such sale, a 'Forward Flow Sale.')"[4]  In other words, under the Agreement and Amendment, Rural/Metro agreed to sell some specifically identified non-performing accounts and "additional" forward-flow accounts.

Alas, things did not go as planned.  Rural/Metro did not close on the sale of "additional" forward-flow accounts to Capio, which Capio claims violated the terms of the Amendment.  Capio alleges that Rural/Metro, after merging with American Medical, did manage to produce forward-flow accounts on multiple occasions but failed to close, "despite Capio's willingness to consummate a purchase."[5]

The parties disagree on the particulars of the purchase price.  Capio argues that the parties originally agreed on a $3,000,000 purchase price but that "as the parties neared the closing . . . Rural/Metro was looking to increase the price."[6]  As a

---

[1] Defs.' App. at 4.

[2] Defs.' App. at 28.

[3] Defs.' App. at 38.

[4] Defs.' App. at 38.

[5] Doc. No. 28 at 5.

[6] Doc. No. 51 at 3.

result, Capio alleges, the parties amended the Agreement to include the sale of forward-flow accounts, adding $300,000 to the purchase price.⁷ Rural/Metro denied this allegation in its answer to Capio's Amended Complaint.

The defendants claim in their motion for summary judgment that the Amendment is an unenforceable contract because it does not specify the quantity of accounts to be sold. Capio, unsurprisingly, disagrees. At issue is whether the terms of the Amendment are sufficiently definite to create a binding contract with respect to the sale of forward-flow accounts.

## II. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."⁸ "A fact is material if it 'might affect the outcome of the suit'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"⁹

Under Texas law, the "prime directive" in interpreting a written contract "is to ascertain the parties' intent as expressed in the instrument."¹⁰ Courts may only look

---

⁷ *See id.* ("To satisfy that need, the parties then amended the [Agreement] to include an additional $300,000. That additional amount was paid in exchange for Rural/Metro agreeing to add a Forward Flow Sales component."); Pl.'s Am. Compl. at ¶ 13 ("The originally negotiated purchase Price for the [Agreement] accounts was $3,000,000. As the parties neared closing, however, they agreed to increase the Purchase Price to $3,300,000 in exchange for the execution of a forward looking [sic] amendment to the [Agreement].").

⁸ FED. R. CIV. P. 56(a).

⁹ *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

¹⁰ *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018).

to parol evidence "where a contract is first determined to be ambiguous."[11] A contract is ambiguous only when "the contract language is susceptible to two or more reasonable interpretations."[12] Ambiguity is not the same as indefiniteness.[13] Generally, Texas courts will find contract terms definite enough to provide a remedy "if the parties clearly intended to agree and a 'reasonably certain basis for granting a remedy exists.'"[14] But if the terms of a contract are not "sufficiently definite to enable a court to understand the parties' obligations," the contract is not legally binding.[15]

### III. Analysis

The thrust of the defendants' argument is that Rural/Metro did not breach its obligations under the Agreement, as modified by the Amendment, because the Amendment did not create an enforceable contract. By using only the term "additional" to describe the quantity of forward-flow accounts, the defendants argue, the Amendment lacks an essential quantity term, rendering it unenforceable. The defendants allege that because the term "additional" is not ambiguous, the Court should not look outside the contract at parol evidence, as Capio urges. The Court agrees with the defendants.

---

[11] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also Sun Oil (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981) ("If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite, certain legal meaning.").

[12] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[13] *See id.* ("If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous, and we construe it as a matter of law.").

[14] *Id.* (citing Restatement (Second) of Contracts, § 33 cmt. b (1981)).

[15] *Chavez v. McNeely*, 287 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.], 2009, no pet.).

A. "Additional" Is Too Indefinite to Enforce Rather Than Ambiguous.

A contractual modification "must satisfy the elements of a contract: a meeting of the minds supported by consideration."[16] Texas disfavors forfeiture (*i.e.*, finding a contract too vague to enforce).[17] To avoid forfeiture, Texas courts "will find the contract terms definite enough" to provide a remedy "if the parties clearly intended to agree and a 'reasonably certain basis for granting a remedy exists.'"[18] In construing an agreement to avoid forfeiture, a court "can imply terms that can reasonably be implied."[19]

But the contractual modification at issue here, the Amendment, flunks this test because it lacks an essential term: quantity. The only reference to quantity in the Amendment is the word "additional." Texas courts "look to dictionaries to deduce the plain meaning of a term."[20] The definition of "additional" is: "more than is usual or expected."[21]

The Court assumes without deciding that the parties intended to create a contract. The next step then is to imply a quantity term that can reasonably be implied, provided that a "reasonably certain basis for granting a remedy exists."[22]

---

[16] *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986).

[17] *See Fischer v. CTMI, L.L.C.*, 479 S.W.2d 231, 239 (Tex. 2016) ("Forfeitures are not favored in Texas, and contracts are construed to avoid them.").

[18] *Id.* (citing Restatement (Second) of Contracts, § 33 cmt. b (1981)).

[19] *Id.*

[20] *Petula Assocs. v. Dolco Packaging Corp.*, 70 Fed. App'x 165, 167 (5th Cir. 2003).

[21] MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/additional (last visited November 10, 2020).

[22] *Fischer*, 479 S.W.3d at 239.

That basis does not exist here.

"Additional" is not ambiguous. It has a "definite certain legal meaning."[23] As explained above, it means more than is usual or expected. The practical effect of that meaning is that there is no quantity term which exists that could provide a "reasonably certain basis" for this Court to fashion a remedy. While the Court recognizes that it would have been impossible for the parties to include a specific quantity term, the problem could have been avoided by contracting for "all" forward-flow accounts. But without a reasonably certain basis for granting a remedy, this Court cannot imply terms to avoid forfeiture, even if it assumes that the parties did intend to enter into a binding agreement.

Because "additional" is not ambiguous, the Court cannot look outside the contract to evidence of prior dealings, as Capio urges. Capio argues that this Court should look to the 2009 Agreement between the parties, in which they agreed that "Seller will deliver to Purchaser . . . *all* of Seller's Accounts that satisfy the criteria."[24] Viewed against the backdrop of the parties' prior course of dealings, Capio argues, it is clear that the parties intended to sell all forward-flow accounts with the requisite characteristics. But as explained above, Texas law prohibits this Court from looking outside the Amendment where no ambiguity exists. And even if the Court did look to this outside evidence, it could cut the other way by demonstrating the parties contracted for something different than "all" forward-flow accounts in the

---

[23] *Sun Oil*, 626 S.W.2d at 732.

[24] Pl.'s App. at 13 (emphasis added).

Amendment.  Because the quantity term at issue here is not "sufficiently definite to enable [this] Court to understand the parties' obligations," the Amendment is not legally binding.[25]

## B. No Basis for Remedy

By including language indicating that Rural/Metro would sell "additional Accounts," the Amendment surely contemplates that *some* (*i.e.*, more than zero) forward-flow accounts would be offered to Capio.  But considering the plain meaning of "additional," and the absence of any other quantity term, the only certain conclusion is that the parties intended to exchange *at least one* forward-flow account.  Any conclusion regarding the quantity of forward-flow accounts to be sold beyond that is mere conjecture.[26]

Capio acknowledged that the Amendment did not describe a specific number of forward-flow accounts:

> Q. What is the number of accounts that Rural/Metro was obliged to offer on each quarter under Amendment No. 1?
>
> A. There's no number.[27]

Capio argues that the Amendment necessarily had to lack a specific quantity term because "there is no evidence that the parties could have accurately predicted

---

[25] *Chavez*, 287 S.W.3d at 845.

[26] *Cf.* Paul Bignell, *42: The Answer to Life, the Universe and Everything*, The Independent, Feb. 6, 2011, *at* https://www.independent.co.uk/life-style/history/42-the-answer-to-life-the-universe-and-everything-2205734.html (engaging in an in-depth discussion of Douglas Adams's joke in THE HITCHHIKER'S GUIDE TO THE GALAXY that "[t]he answer to the ultimate question of life, the universe and everything is 42.").

[27] Defs.' App. at 70.

the number" of eligible forward-flow accounts.[28]  The Court agrees with Capio on this point.  Given that the amount of eligible accounts would depend on how many individuals required medical transportation service and then failed to make payments on those services, it would be impossible to predict the actual number of forward-flow accounts.

But Capio knew at least one way to avoid this conundrum.  It did so in the 2009 Agreement for the sale of forward-flow accounts between the parties.[29]  That contract specified that "Seller will deliver to Purchaser . . . a File containing *all* of Seller's Accounts that satisfy the criteria."[30]  This language is noticeably absent from the Amendment, which states only that Rural/Metro would "deliver and offer to sell *additional* Accounts."[31]  But by no means is "all" the only definite measure the parties could have used.  They could have denominated: (1) 42% of all of Rural/Metro's additional forward-flow accounts, (2) the first 42 forward-flow accounts, (3) the first 42 forward-flow accounts and then 42% of all additional accounts thereafter, (4) all additional forward-flow accounts created in months that have 30 days, or (5) all additional forward-flow accounts created on days where a full moon is present that night.  The definite possibilities are limitless—but the parties did not select one of

---

[28] Doc. No. 53 at 10.

[29] Capio urges the Court to look to the 2009 Agreement as evidence that the parties intended to contract for all forward-flow accounts meeting the criteria in the Amendment, as they had in 2009.  This argument fails for two reasons.  First, Texas law forbids courts from creating an ambiguity where none exists.  *See Sun Oil*, 626 S.W.2d at 732 (explaining that "parol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite certain legal meaning").  Second, as addressed above, the 2009 agreement's use of different language shows the parties intended something different in the Amendment.

[30] Pl.'s App. at 13 (emphasis added).

[31] Defs.' App at 38 (emphasis added).

them.

Capio has not produced any evidence to show that there exists a genuine dispute of material fact with regard to the enforceability of the contract. The Amendment's only quantity term, "additional," has a definite legal meaning. The unfortunate practical effect of that definite legal meaning is that the Amendment is unenforceable. Without a quantity term "sufficiently definite to enable [this] court to understand the parties' obligations," the Amendment is not legally binding.[32] There exists no genuine dispute of material fact concerning the Amendment's enforceability because there is no reasonable basis on which this Court can grant a remedy.

### C. Tortious-Interference Claim

Because it finds that the contract is unenforceable, the Court need not address Capio's claim regarding tortious interference with a contract against American Medical.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS the defendants' motion for summary judgment. A separate Final Judgment will follow.

**IT IS SO ORDERED** this 13th day of November 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[32] *Chavez*, 287 S.W.3d at 845.