UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAPIO FUNDING, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 3:17-CV-2713-X |
| § | |
| RURAL/METRO OPERATING § | |
| COMPANY, LLC and AMERICAN § | |
| MEDICAL RESPONSE, INC., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgment from defendants Rural/Metro Operating Company, LLC (Rural/Metro) and American Medical Response, Inc. (American Medical). (Doc. 124). For the reasons stated below, the Court **DENIES** the motion.

### I. Factual Background

This case involves a contract dispute between Capio Funding, LLC (Capio), which manages non-performing healthcare accounts, and Rural/Metro, which provided medical transport services. In July 2015, Rural/Metro merged with American Medical, which is also in the business of medical transportation.

Capio and Rural/Metro entered into an Account Purchase and Sale Agreement (Agreement) in November 2014. Under the Agreement, Rural/Metro agreed to sell, and Capio agreed to buy, 825,522 non-performing accounts with an aggregate, then-current balance of $569,400,759.92.

1

The Agreement also contained an amendment in which Rural/Metro agreed to "deliver and offer to sell additional accounts to [Capio] (such additional Accounts 'Forward Flow Accounts,' and each such sale, a 'Forward Flow Sale.')"[1] The forward flow amendment has a pricing structure and a caveat. The pricing structure had a set formula with a minimum threshold of .75% of the then-current aggregate account balance. In other words, Capio could buy Rural/Metro's future portfolios for the greater of the calculated price or .75% of the aggregate current balance (but it didn't have to buy the portfolio at all if the amendment triggered the .75% threshold price). The forward flow agreement's term was the quarter ending June 30, 2015 to the quarter ending March 31, 2018.

Rural/Metro did not close on the sale of "additional" forward-flow accounts to Capio, which Capio claims violated the terms of the Amendment. Capio alleges that Rural/Metro, after merging with American Medical, did manage to produce forward-flow accounts on multiple occasions but failed to close, "despite Capio's willingness to consummate a purchase."[2] At a prior summary judgment stage, the Court held that the forward flow amendment was too indefinite to constitute a contract, but the Fifth Circuit reversed and remanded for the Court to consider the remaining summary judgment arguments. The Court does so now.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light

---

[1] Doc. 131 at 226.

[2] Doc. 28 at 5.

most favorable to the non-moving party,[3] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A fact is material if it 'might affect the outcome of the suit,'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5]

### III. Analysis

The motion makes three main arguments, which the Court takes in turn: (1) Capio's contract and tortious interference claims against American Medical are invalid; and (2) Capio cannot recover damages for Rural/Metro portfolios. The Court takes the arguments in turn.

### A. Claims Against American Medical

The motion contends that the contract and tortious interference claims against American Medical fail because: (1) American Medical was not a party to the amendment or the purchase and sale agreement; (2) the amendment did not expressly assume Rural/Metro's obligations to Capio; (3) there is no statute requiring American Medical to assume Rural/Metro's obligations; and (4) the tortious interference claim against American Medical fails because American Medical and Rural/Metro belong to the same corporate parent. Capio contests each argument. The Court agrees with Capio.

---

[3] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412 (5th Cir. 2016).

[4] FED. R. CIV. P. 56(a).

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The gist of American Medical's contract arguments is that American Medical and Rural/Metro are legally distinct entities (and American Medical did not assume the Rural/Metro contract).  But the gist of the American Medical tortious interference argument is that American Medical and Rural/Metro have an identical interest (and thus American Medical is justified in interfering).  Both can't be right.

Diving deeper on the tortious interference argument, the Court cannot agree with American Medical on its "unity of interest" theory.  Capio responds to this argument that the caselaw is thin here.  That's likely because courts call this doctrine a different name in tortious interference cases: privilege or justification.  The idea is that if one has a legal right to interfere with a contract, he cannot be liable for tortiously interfering with it.[6]  American Medical knows that moniker very well.  It attempted to file a very belated amended answer, raising "the doctrines of privilege and justification" as an affirmative defense.[7]  But the Court denied American Medical leave to file that belated answer.  Sneaking in a waived defense won't work at summary judgment or at trial.  The Court is not amused and denies American Medical's motion as it pertains to the tortious interference claim.

As to American Medical's arguments to escape the contract claim and damages for breach, the Court also denies the motion.  First, the argument that American Medical is a distinct legal entity is in tension with American Medical's assertion that

---

[6] *Settlement Cap. Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 733 (N.D. Tex. 2004) (Solis, J.) ("The justification defense can be based on the exercise of either one's own legal rights or a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken.").

[7] Doc. 82-1 at 9.

there was unity of corporate interests. But regardless, Capio marshaled evidence that, after the merger, American Medical assumed control over Rural/Metro's decision making and began offering its own accounts to Capio under the amendment to offset the lack of Rural/Metro accounts and that representatives of American Medical and Rural/Metro assured Capio that they would make things right. This is sufficient to create a fact dispute on whether American Medical was a successor to Rural/Metro's obligations under the amendment.[8]

## B. Damages from Rural/Metro Portfolios

Finally, the motion argues Capio cannot pursue damages from Rural/Metro portfolios when Capio: (1) declined to purchase the Rural/Metro portfolios; and/or (2) offered to purchase the Rural/Metro portfolios below the minimum purchase price required by the amendment. Rural/Metro's argument hinges on the view that the minimum purchase price under the forward flow amendment is .75% of the then-current balance. Capio responds that the pricing in the amendment is more variable, accounting for less value in older accounts, and that Rural/Metro failed to provide the forward flow accounts within 20 days of each quarter, as the amendment requires (and instead provided those accounts at random times, resulting in lower offers because of the older age of the accounts).

---

[8] Likewise, any argument that contracts damages cannot be had from American Medical misunderstands Capio's damage model. Under the damage model, Capio seeks lost profits from Rural/Metro directly and American Medical as successor and claims the best evidence of lost profits comes from calculations of similar portfolios American Medical had. There is no legal basis for the Court to preclude Capio from recovering from American Medical under the successor in interest claim.

The Court agrees with Capio. Taking the facts in the light most favorable to Capio, there is evidence that Rural/Metro did not timely send forward flow accounts to Capio for calculation of pricing. Because the age of accounts is material (and must be material because the parties incorporated it into the pricing formula), then Rural/Metro arguably materially breached the amendment first.[9] As such, Rural/Metro is not entitled to prevail at summary judgment on Capio's claims for breach.

Rural/Metro counters in reply that prior material breach is only a defense to a breach claim and not a defense to a defense of a breach claim. And it further argues that Capio must show it performed or tendered performance to prevail on a breach claim. That's all true but still misses the mark. Under the amendment, (1) Rural/Metro has 20 days from the end of each quarter to tender forward flow accounts to Capio for pricing analysis; (2) Capio makes its offer to Rural/Metro (if it is required to); and (3) the parties close on the sale. So Rural/Metro's bone to pick is that Capio botched step 2 by not paying the amendment minimum of .75%. Think of it this way. Assume Bob wants his house painted. He hires Tom to paint it for $10,000. Then Bob gets sneaky and burns the house to the ground so Tom can't paint it. When Tom sues for breach of contract and seeks his lost profits, can Bob rightfully claim that Tom didn't perform or tender performance? No. Or think of it another way. Under the amendment, could Rural/Metro have waited 100 years to tender the first accounts

---

[9] *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) ("Driver did not have a valid claim against Mustang due to its prior material breach[.]").

to Capio and demanded the contract threshold of .75%? Of course not. A plaintiff can't perform when a defendant makes it impossible. A plaintiff can tender performance, and Capio has ample evidence of this in the record. Thus, the Court denies Rural/Metro's motion as to the claimed damages for the 10 Rural/Metro portfolios.

## IV. Conclusion

For the above reasons, the Court **DENIES** the defendants' motion for summary judgment.

**IT IS SO ORDERED** this 31st day of January, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE