UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CAPIO FUNDING, LLC,<br><br>　*Plaintiff,*<br><br>v.<br><br>RURAL/METRO OPERATING COMPANY, LLC and AMERICAN MEDICAL RESPONSE, INC.,<br><br>　*Defendants.* | Civil Action No. 3:17-CV-2713-X |

**MEMORANDUM OPINION AND ORDER ON POST JUDGMENT MOTIONS**

The Court previously entered a final judgment in this contract dispute of $3.3 million for Capio Funding, LLC (Capio) based on the jury's verdict. Before the Court are three motions: (1) a motion for attorney's fees from Capio (Doc. 206), (2) a motion for new trial from the Capio (Doc. 210), and (3) a motion for judgment as a matter of law from the defendants (Doc. 212). For the below reasons, the Court **DENIES WITHOUT PREJUDICE** the motion for fees, **DENIES** the motion for new trial, and **DENIES** the motion for judgment as a matter of law.

### I. Factual Background

This case involves a contract dispute between Capio, which manages non-performing healthcare accounts, and Rural/Metro, which provides medical transport services.

1

Capio and Rural/Metro entered into an Account Purchase and Sale Agreement (Agreement) in November 2014. Under the Agreement, Rural/Metro agreed to sell, and Capio agreed to buy, certain non-performing accounts.

The Agreement also contained an amendment (Amendment) in which Rural/Metro agreed to "deliver and offer to sell additional Accounts to [Capio] (such additional Accounts 'Forward Flow Accounts,' and each such sale, a 'Forward Flow Sale.')"[1]

Rural/Metro did not close on the sale of "additional" forward-flow accounts to Capio, which Capio claims violated the terms of the Amendment. In July 2015, Rural/Metro merged with American Medical Response, Inc. (AMR), which is also in the business of medical transportation. Capio alleges that Rural/Metro, after merging with AMR, did manage to produce forward-flow accounts on multiple occasions but failed to close, "despite Capio's willingness to consummate a purchase."[2]

After a three-day trial, the jury found that Rural/Metro breached the Amendment, AMR expressly and impliedly assumed Rural/Metro's obligations in the Amendment, and Capio is entitled to $3.3 million in actual damages. The Court entered judgment for Capio, awarding $3.3 million in damages and pre- and post judgment interest.

## II. Analysis

The Court takes each motion in turn.

---

[1] Doc. 131 at App. 209.

[2] Doc. 28 at 5.

### A. Capio Motion for Fees

In accordance with the final judgment, Capio filed a motion for attorney's fees. While Texas law entitles Capio to reasonable and necessary fees for prevailing in this breach of contract action, the Court deems it more prudent to address the particulars of Capio's fee request after an appeal. If the Fifth Circuit affirms, then Capio should file its renewed fee motion within 30 days of mandate issuing. If the Fifth Circuit should reverse in whole or in part, this Court will enter a new scheduling order.

### B. Capio Motion for New Trial

The contract claim wasn't the only claim at trial. Capio also had a tortious interference claim against defendant American Medical Response, Inc. (AMR) that—if Capio prevailed—would have opened up the possibility of punitive damages. Capio likes the award on the contract claim but dislikes the inability to get more from AMR through the tortious interference claim and moves for a new trial on that claim only. AMR argues a new trial is warranted because: (1) the jury finding of $0 on the tortious interference claim was against the great weight of the evidence, and (2) the charge on the justification defense was wrong. The Court disagrees.

First, the jury's finding of no damages on the tortious interference claim was not "manifestly too small."[3] The jury found that AMR tortiously interfered but had a good faith defense. The conditioning language for the damages question forced the jury to answer the damages question even if the jury found the defense to apply. The

---

[3] Tex. R. Civ. P. 320.

jury didn't exhibit confusion. It exhibited a lack of confusion. The trial evidence supports any of at least two reasons for the jury finding no tortious interference damages. First, the jury could have concluded AMR assumed Amendment No. 1, was liable directly for breach of contract damages, and there were no further tortious interference damages (it made the first two findings expressly). Second, the jury could have disbelieved Capio's expert testimony because it was based on AMR and not Rural/Metro accounts.[4] Nothing in the jury's finding of no tortious interference damages warrants a new trial.

Capio's second argument is that the good-faith defense in Question 7 was wrong. True, Capio objected to this question and offered a different version: "Did [AMR] have a good faith belief it had a legal right of its own to interfere with the Amendment at the time of the interference?"[5] Based on the record at trial, the Court sees no reason the jury would have answered this formulation "No" when it answered Question 7 "Yes." Earlier in the verdict, the jury found that AMR expressly and impliedly assumed Rural/Metro's contractual obligations. So the jury would answer "Yes" to both Question 7 or Capio's preferred version of it. And in any event, the jury

---

[4] AMR argued in its response to the motion for new trial that this and other defects rendered Capio expert Meadors's testimony "unreliable" and enabled the jury to disregard it. Capio seized on "unreliable" to counter that this is a late *Daubert* motion in disguise. When AMR made this objection to the admissibility of Meadors's testimony at trial, the Court let the evidence in, viewing it as going to weight and not admissibility. AMR made its arguments to the jury, and the jury was entitled to give his testimony full weight, no weight, or some weight. Capio errs in thinking that a jury must follow testimony just because it is admissible. All trials involve dueling admissible testimony. That's the point.

[5] Doc. 188 at 4.

found no additional damages for tortious interference, as discussed above. As a result, Question 7 became immaterial and Capio cannot show it was harmful.

### C. Defendants' Motion for Judgment

The defendants make three arguments that they are entitled to judgment as a matter of law: (1) Capio presented no benefit-of-the-bargain damages evidence or damages evidence from the time of breach; (2) the judgment should not award Capio damages over $2,487,122; and (3) there is no evidence AMR assumed Rural/Metro's contractual obligations. The Court disagrees.

First, the defendants argue Capio's expert testified to damages in an inappropriate timeframe and as if the .75% threshold in Amendment 1 did not apply. But, as Capio counters, Meadors applied a discount rate to tie damages back to the date of the breach based on his forecast of income from collections on portfolios. This was sufficiently reliable for the jury to consider.

Second, the defendants argue that Capio's expert testified that the value of damages for the date of the breach was $2,487,122, and any amount higher is impermissible. But Capio's expert testified that its damages were $8,644,909 in lost profits without the growth factor. The jury was certainly entitled to find an amount less than half of that.[6]

---

[6] The defendants' motion also claims that awarding over $2,487,122 and prejudgment interest is a double recovery. Awarding over $8,644,909 and prejudgment interest would seem to be a double recovery, but $3,300,000 and prejudgment interest is not.

Third, the defendants argue there is no implied assumption in Texas and no evidence of express assumption at trial. The Court maintains the position that it has had throughout this case. As the Court it explained when entering judgment:

> [T]he Fifth Circuit has held that in an acquisition case like this, "[a]n oral contract can be binding,"[7] while quoting a Texas Supreme Court case saying "[t]he conception is that of a meeting of the minds of the parties as implied from and evidenced by their conduct and course of dealing, the essence of which is consent to be bound."[8]

And the Texas Supreme Court recently described that a successor "has also been defined as applying to . . . one who has stepped into the shoes of another and assumed the same role or function even without the existence of a formal or legal relationship with the predecessor."[9] And the jury heard plenty of evidence at trial that AMR expressly stepped into the shoes of Rural/Metro.[10] Perhaps this is why AMR agreed to the definition of "express" at trial.[11] This is no basis for the defendants to win.

### III. Conclusion

For the above reasons, the Court **DENIES WITHOUT PREJUDICE** the motion for fees, **DENIES** the motion for new trial, and **DENIES** the motion for judgment as a matter of law.

---

[7] *Aperia Sols., Inc. v. eVance, Inc.*, No. 21-10683, 2022 WL 2116001, at *4 (5th Cir. June 13, 2022) (cleaned up). While the Court is loath to cite its reversals, the Court must learn from them. This is the way.

[8] Doc. 203 at 3 (quoting *Aperia Sols., Inc. v. eVance, Inc.*, No. 21-10683, 2022 WL 2116001, at *4 (5th Cir. June 13, 2022) (cleaned up).

[9] *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 342 (Tex. 2023).

[10] Like Capio hearing from AMR employee Dorn that "We will do it." Trial Tr. Vol. 1 at 194. Or AMR employee Dorn stating that he "absolutely" wanted to comply with Amendment 1. Trial Tr. Vol. 2 at 543.

[11] Trial Tr. Vol. 4 at 904.

**IT IS SO ORDERED** this 7th day of January, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE